UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**KIM IRENE JAMES**,                                    Civil Case No. 6:12-CV-01832-KI

            Plaintiff,

                                    OPINION AND ORDER

               v.

**CAROLYN W. COLVIN**, Acting
Commissioner of Social Security,

            Defendant.


       Kathryn Tassinari
       Mark A. Manning
       Harder, Wells, Baron & Manning, P.C.
       474 Willamette, Suite 200
       Eugene, Oregon  97401

              Attorneys for Plaintiff

       S. Amanda Marshall
       United States Attorney
       District of Oregon

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Erin F. Highland
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-2495

      Attorneys for Defendant

KING, Judge:

Plaintiff Kim Irene James brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

Page 2 - OPINION AND ORDER

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability. The evaluation is

carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on

the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520

and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful

activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise,

the ALJ proceeds to step two and determines whether the claimant has a medically severe

impairment or combination of impairments. A severe impairment is one "which significantly

limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

§§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of

impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),

416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled. If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

### THE ALJ'S DECISION

The ALJ found James had severe impairments of lumbar and cervical disc degeneration, status post lumbar diskectomy and laminectomy, and hypotension.  The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically

equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. After reviewing the record, the ALJ found James had the residual functional capacity to perform light work with the following limitations: occasional bending or lifting, no lifting objects over 35 pounds, no lifting objects over 25 pounds from the floor to a level surface, no prolonged sitting without rest as needed every 45 minutes up to seven hours out of an eight-hour day, typing and word processing activities require rest every hour for ten minutes, and standing and walking are limited to 30 minutes at a time for up to four hours in an eight-hour day. Based on the testimony of a vocational expert, the ALJ found James could work as a ticket seller, information clerk, and small product assembler and, thus, was not disabled under the Act.

## FACTS

James was 45 years old when the ALJ issued his opinion. She has a high school education and primarily worked as a baker and cashier. James claims to have been disabled since May 4, 2007 because of heart problems and back pain.

James has stabbing pain in her back, neck, legs, and feet. She claims to have episodes of heart palpitations which make her tired and can cause her to faint, although she had not fainted for a few months prior to the hearing. Standing for fifteen minutes causes James to feel as if she will faint. The episodes occur three or four times a day, even with prescription medication to control her heartbeat. James uses a cane which allows her to walk up to an hour and a half, "if she's lucky[,]" but causes extreme pain taking James two to three days to recover. Tr. 39. She can barely lift a gallon of milk. James' legs go to sleep if she does not keep them moving, she has headaches, her hands turn blue, and she complains of a loss of feeling in her arms and hands after ten or twenty minutes of use. She has trouble showering and washing her hair, so James cut

Page 5 - OPINION AND ORDER

her hair short just before the hearing.  Even with narcotic pain medication and prescription

sleeping pills, James only sleeps for two or three hours before the pain wakes her up, requiring

her to move around.  James and her husband used to socialize and go out dancing, go for walks,

go shopping, go for long drives, and travel to other parts of the state but that all ended four or

five years before the hearing due to James' pain.  She has given up cooking elaborate meals and

working in the garden.  Her husband does a lot of the housework.

## DISCUSSION

I.    James' Credibility

    The ALJ found James' subjective testimony not credible to the extent it was inconsistent

with his residual functional capacity assessment.  James argues the ALJ failed to give clear and

convincing reasons for rejecting her testimony.

    When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The

claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of

the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the

claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically

identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony."  Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

General findings are insufficient to support an adverse credibility determination, and the ALJ

Page 6 - OPINION AND ORDER

must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v.

Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  Although the ALJ cannot reject subjective

pain testimony solely because it was not fully corroborated by objective medical evidence,

medical evidence is still a relevant factor in determining the severity of the pain and its disabling

effects.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

James' treating neurosurgeon, Dr. Goodwin, performed lumbar surgery on James on

August 19, 2008 to treat back and leg pain.  He released her to work without regular bending and

twisting the following October 1.  The ALJ noted James never reported to Dr. Goodwin her leg

symptoms or passing out from standing, and she did not report the problems to her family

physician, Dr. Carr, until April 2009, when James was working nearly full time.

When Dr. Goodwin released James, her leg pain had ceased; it did not return until the

spring of 2009.  Dr. Carr did not suggest James return to Dr. Goodwin for evaluation.  Thus,

James did not have the opportunity to tell him the leg pain had returned.  Further, Dr. Goodwin, a

neurosurgeon, only treated James for leg and back pain.  None of her treating providers think the

near-fainting episodes and dizziness are caused by any body system which Dr. Goodwin treats.

There was no need for James to tell him about her other medical problems.  This is not a clear

and convincing reason.

The ALJ noted the discrepancy between James' plan to care for her newborn

granddaughter every night when James' daughter returns to work, and James' complaints that

lifting ten to fifteen pounds is very painful and she has no feeling in her hands.  The ALJ reasoned James was risking dropping her grandchild.

The ALJ overstates James' duties when caring for her infant granddaughter.  James explained at the hearing she currently was keeping her daughter company two or three times a week–James was not alone with the baby.  The plan was for James and her husband to watch the granddaughter overnight once the daughter returns to work on a night shift.  James' husband was a single father who raised his children from a previous relationship, so he is experienced in childcare.  James sits and holds the baby in her lap after her husband hands the baby to James.  She also does not walk and carry the child.  James' testimony about the childcare is consistent with her alleged symptoms.  The ALJ's stated reason is not clear and convincing.

The ALJ noted James' statement that she must rest for a couple of days to recover from standing one or two hours in a day.  He found her statement inconsistent with James' activities of daily living:  caring for her granddaughter, driving her daughter and son-in-law to and from work, preparing meals, watching television, caring for pets, laundry, cleaning the home, grocery shopping, and handling finances.

As I explained above, the ALJ overstated James' childcare duties.  Moreover, James' husband testified James no longer works in the garden or cooks elaborate meals because she cannot tolerate standing the amount of time required to do so.  She prepares meals "mostly out of boxes and cans."  Tr. 64.  In her husband's own words, he does "a lot of the housework, laundry and crap like that."  Id.  It takes James two hours to clean the floor of her ten-foot-square kitchen because she has to take three or four rest breaks of ten to fifteen minutes each.  James stated on a form she was able to handle the financial tasks, which I take to mean she understood the financial

concepts, but her husband actually does the paperwork.  The reduction in James' activities does not support the ALJ's reason.

The ALJ was concerned about James' requests to her doctor for notes to excuse her from work and later, to release her back to work.  The ALJ believed James' return to work was inconsistent with her complaints of disabling impairments.

James explained at the hearing that she had returned to work at Walmart, where she was a baker and cashier, three different times.  One of the times she left was due to her back pain and subsequent back surgery.  At other times, James was having trouble with anxiety which she and Dr. Carr attributed to stress in her job as a baker.  James switched to a cashier position in an attempt to reduce the stress and her symptoms.  When Dr. Carr released James to work in May 2009, she did so because James explained she was the breadwinner in the family after her husband was laid off, and she really needed to return to work, in spite of her symptoms.  The Act does not penalize claimants for unsuccessful work attempts; the ALJ characterized James' work in 2008 and 2009, after her alleged onset date, as unsuccessful work attempts because her earnings fell just below the substantial gainful activity income thresholds.  There is no support for the ALJ's conclusion that James' return to work meant she was no longer disabled.  James' attempt to return to work is not a clear and convincing reason to discredit her testimony.

The ALJ noted James used a cane even though no doctor had recommended it.  James readily admitted the cane was not prescribed, but in the musculoskeletal examination in March 2011, Dr. Armstrong-Murphy found the cane to be medically necessary.  The ALJ's reason is not a clear and convincing one.

The ALJ noted no diagnosis explains the alleged numbness in James' hands.  He noted
Dr. Armstrong-Murphy's musculoskeletal examination resulted in limitations for low back
problems but normal upper extremity findings.  I disagree–Dr. Armstrong-Murphy limited
James's fingering by requiring a ten-minute rest every hour.  Additionally, on July 13, 2010, Dr.
Carr noted James needed an evaluation by a neurosurgeon using MRIs but James' lack of income
and insurance at the time prevented it.  I agree there was no diagnosis explaining the numbness
but Dr. Carr believed there was a neurological cause for the problem, even though James did not
have the resources to track it down.  The ALJ's reason is not clear and convincing.

The ALJ reviewed the cardiac workup a cardiologist performed on James and concluded
there was no impairment that would cause fainting episodes.  Dr. Carr and a cardiologist were
treating James for orthostatic hypotension (a drop in blood pressure when James stands up),
tachycardia (heart palpitations), and bradycardia (low heart rate).  Dr. Carr's chart notes
demonstrate the hypotension and bradycardia many times over in James' vital signs taken at
office visits.  The Holter monitor recorded tachycardia episodes.  These problems could all cause
actual fainting spells, or alternatively cause James to feel as if she was about to faint.  James took
atenolol since 2001 to treat the tachycardia.  At times, she had to stop taking the medication, or
change the dosage, because her blood pressure and heart rate would drop too low.  Tr. 389, 421.
The ALJ's reasoning is not supported by substantial evidence in the record.

In sum, none of the reasons the ALJ gave to discredit James' subjective symptom
testimony are clear and convincing ones.  Accordingly, I find the ALJ erred in rejecting her
testimony.

II.    <u>Treating Physician's Opinion</u>

James contends the ALJ improperly rejected the opinion of her treating physician,

Dr. Carr.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  More weight is given

to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).  If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record.  <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at

1066.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence

that justifies the rejection of the opinion of either an examining physician or a treating

physician."  <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1202 (9th Cir. 2008) (internal

quotation omitted).

On January 20, 2010 and March 4, 2011, Dr. Carr gave very similar opinions about

James' medical condition.  She explained James suffered from dizziness since March 2009 and

had neck, back, and chest pain which had been ongoing for several years and was worsening.

Dr. Carr stated James would have to lie down and rest periodically during the day because she

gets dizzy when standing more than a few minutes.  Dr. Carr concluded James could stand and

walk less than two hours in a normal eight-hour work day, sit for less than six hours in a normal

Page 11 - OPINION AND ORDER

work day, and never lift.  She also opined James would miss more than two days per month due to her condition.

The Commissioner claims Dr. Carr's opinion was contradicted by the opinion of the State agency physician, thus allowing the ALJ to reject Dr. Carr's opinion by giving specific and legitimate reasons.  James argues the ALJ had to give clear and convincing reasons to reject Dr. Carr's opinion because Dr. Armstrong-Murphy did not contradict Dr. Carr's opinion, and the opinion of a State agency physician does not provide substantial evidence by itself to contradict Dr. Carr, a treating physician.

I agree Dr. Armstrong-Murphy did not contradict Dr. Carr's opinion because Dr. Armstrong-Murphy gave James a musculoskeletal evaluation which did not address her heart and blood pressure problems.  That leaves the State agency physician as the only physician to contradict Dr. Carr's opinion.  Under the case law cited above, the ALJ may reject Dr. Carr's opinion by giving specific and legitimate reasons supported by substantial evidence in the record, but the opinion of the nonexamining State agency physician, by itself, does not constitute substantial evidence.

The ALJ does not rely on the opinion of the State agency physician but gives several other reasons to reject Dr. Carr's opinion.  First, the ALJ notes Dr. Carr is a general practitioner. James agrees Dr. Carr is not a specialist, but she contends Dr. Carr is the only physician to treat all of her conditions.

It is true that more weight is given to the opinion of a specialist concerning matters in his specialty than to the opinion of nonspecialist.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  The ALJ only cites Dr. Armstrong-Murphy, an internist who addressed Carr's neck

Page 12 - OPINION AND ORDER

and back problems but did not give an opinion on Carr's hypotension or heart issues.  Thus, the

ALJ did not actually give more weight to the opinion of a specialist who addressed these other

issues and who disagreed with Dr. Carr.  This reason is not a specific and legitimate one to reject

Dr. Carr's opinion.

   The ALJ is concerned Dr. Carr offered her opinion years after James believes she became

disabled (May 2007) and concludes the dizziness did not become a problem until March 2009.

James claims Dr. Carr's statement concerns only the onset date of her condition and should not

be a basis to reject the opinion.  I agree with James.  Doctors do not generally offer opinions on

whether a patient is disabled unless asked.  I also note her attorney proposed at the hearing to

amend the alleged onset date because of James' unsuccessful work attempts.  The date of

Dr. Carr's opinion may have allowed the ALJ to change the alleged onset date but it is not a

specific and legitimate reason to reject Dr. Carr's entire opinion.

   Next, the ALJ concludes Dr. Carr misinterpreted James' cardiac test results.  James

argues Dr. Carr attributed her dizziness and fainting to orthostatic hypotension, and not to a

cardiac condition.

   I see no basis for the ALJ's conclusion about the cardiac test results other than perhaps

the ALJ's own expertise in the subject.  If the ALJ was concerned about James' cardiac issues

and Dr. Carr's interpretation of cardiac test results, the ALJ could have sent James for an

examination by a cardiologist.  A Social Security ALJ has an "independent duty to fully and

fairly develop the record and to assure that the claimant's interests are considered."  Tonapetyan

v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).  Although Carr had

been prescribed medication by a cardiologist to treat tachycardia, and her primary care physician

Page 13 - OPINION AND ORDER

had tinkered with the dosage to combat other issues, there are raw cardiac test results in the record but no opinions from either the treating cardiologist or an examining cardiologist. thus, there is no support for the ALJ's opinion about Dr. Carr's interpretation.

The ALJ's last reason to reject Dr. Carr's opinion is that James' subjective complaints are far less credible than the weight Dr. Carr gave them. Credibility determinations bear on the evaluation of medical evidence when there are conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005). As explained above, the ALJ improperly rejected James' testimony.

In sum, the ALJ has given no specific and legitimate reasons to reject Dr. Carr's opinion.

III.    Remedy

The ALJ erred in discrediting Carr's subjective symptom testimony and in rejecting Dr. Carr's opinion. Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant, or the expert's testimony has no evidentiary value. Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have

articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule is mandatory or discretionary but not resolving the conflict).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Connett, 340 F.3d at 876.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

This is the unusual case in which the record clearly shows Carr is unable to perform gainful employment.  Her treating physician concluded Carr would miss at least two days of work a month.  As the vocational expert testified, no jobs exist which can tolerate that number of absences.  Consequently, I remand the case for a finding of disability.

///

///

///

Page 15 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____26th_____ day of September, 2013.


___/s/ Garr M. King_____
Garr M. King
United States District Judge